Leslie R. EARL, Public Defender; Thomas W. Burns, Assistant Public Defender; Pete Silva, Jr., Assistant Public Defender; John Dratz, Jr., Assistant Public Defender; Deborah Shallcross, Assistant Public Defender; Frank H. McCarthy, Assistant Public Defender; Frank M. Laphen, Assistant Public Defender, Petitioners,

v.

TULSA COUNTY DISTRICT COURT, William W. Means, District Court Judge; Richard Armstrong, District Court Judge; Bill Beasley, Associate District Court Judge; Robert Caldwell, District Court Judge; Richard Comfort, District Court Judge; Jay Dalton, District Court, Judge; Raymond Graham, District Court Judge; Patricia Hoebel, District Court Judge; Joe Jennings, District Court Judge; Margaret Lamm, District Court Judge; Robert Martin, District Court Judge; M. M. McDougal, District Court Judge; Ronald Ricketts, District Court Judge; David Winslow, District Court Judge, Tulsa County Court Fund Board, William W. Means, District Court Judge; Bill Beasley, Associate District Court Judge; Don Austin, Court Clerk, Respondents.

No. 53952.

Supreme Court of Oklahoma.

Nov. 20, 1979.

As Amended Jan. 28, 1980.

Rehearing Denied Jan. 29, 1980.

Stephen C. Wolfe, Paul D. Brunton, Tulsa, for petitioners.

S. M. Fallis, Jr., James F. Raymond, Tulsa, for respondents.

OPALA, Justice.

The question sought to be presented is whether by the terms of 19 O.S.Supp.1974 § 138.4(a)[1] discretion is reposed in the district judges in each of the two affected counties[2] to establish the public defender's salary and that of each of his/her bugetarily authorized assistants at some level "commensurate with" that provided for the counterpart positions in the local prosecutor's office. Petitioners urge upon us a construction mandating absolute and undeviating equality of compensation rates for comparable functionaries in the two services. We assume jurisdiction under Art. 7 § 4, Okl.Con. and, additionally, invoke our powers of administrative control under Art. 7 § 6, Okl.Con., to settle this first-impression issue and resolve what appears to be an intra-service conflict in managerial approach.[3] Our answer is that the statute under construction is self-executing and hence permits no exercise of managerial discretion.

The controversy arose when in January 1979 the public defender in Tulsa County sought for himself and for six (6) of his assistants a salary structure based on the increased rate of pay authorized, effective January 1, 1979, by the terms of 19 O.S. Supp.1977 §§ 215.14 and 215.15, for the state prosecutorial service.[4]

1. In its pertinent part 19 O.S.Supp.1974 § 138.-4(a) provides:
    ". . . (a) . . . a public defender on a full-time basis . . . shall receive a salary *commensurate with the salary received by the district attorney in said district*, payable monthly, from the court fund of such county . . . assistant defenders on a full-time basis . . . *shall receive a salary commensurate with the salaries of assistant district attorneys in their districts, payable monthly, out of the court fund of the county . . .*" (emphasis added)

2. Tulsa and Oklahoma Counties.

3. We are advised that in Oklahoma County the district judges view § 138.4(a) as mandating absolute equality of compensation with the prosecutor's personnel in comparable positions.

4. He sought for himself the equivalent of the District Attorney's salary of $30,000.00 and for his assistants the following amounts:

The request came to be renewed in May 1979 shortly after the Legislature passed Senate Concurrent Resolution # 30. That document declares that the words "commensurate with", used in § 138.4(a), were intended to have a meaning synonymous with "equal to". The instant proceeding followed the district judges'[5] rejection, on June 29, 1979, of the public defender's plea to have his increased-pay request reconsidered.

The adjective "commensurate", when used with the preposition "with", may have two different meanings. These will, of course, vary with the context in which the words are used. When the referent is specific in size, extent, measure, or amount, "commensurate" denotes "equal". This is the word's first and primary meaning commonly ascribed to it by the lexicon. It is only when a nonspecific referent is used that "commensurate" means "corresponding in size" or "proportionate to". "An income commensurate with his needs" is a frequently employed phrase that serves as an example of the adjective's secondary meaning. This English usage is clearly compatible with the word's etymology. In Latin "commensurate" means literally "equal in measure".[6]

The object of comparison provided in § 138.4(a) for ascertainment of defense

| First Assistant | 90% | $27,000.00 |
| Assistant | 75% | 22,500.00 |
| Assistant | 75% | 22,500.00 |
| Assistant | 65% | 19,500.00 |
| Assistant | 60% | 18,000.00 |
| Assistant | 60% | 18,000.00 |

5. The request was rejected by a vote of seven to six.

6. Webster's Third International Dictionary p. 456. The word "commensurate" is "one of relative measurement" and, for its exact meaning, it needs an object of comparison. When that *object is certain*, "commensurate with" means "equal to". *Rynar v. Lincoln Transit Co.*, 129 N.J.L. 525, 30 A.2d 406, 412 [1943]; *Nissen v. Miller*, 44 N.M. 487, 105 P.2d 324, 326 [1940]; *Succession of Correjolles*, 206 La. 581, 19 So.2d 259, 265 [1944]; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 [Tex.1976].

functionaries' compensation level is the statutorily fixed salary structure for the prosecutorial service. That referent, we find, is sufficiently certain to warrant attributing to the words "commensurate with" a meaning synonymous with "equal to". We so hold.[7]

There exists another, even more potent reason, for preferring this construction. Attribution of the more "flexible" meaning urged upon us by the respondents, which would require no more than a "rough approximation" of the defender's pay level to that of the prosecution, would make the exact amount of compensation subject to the district judges' exercise of discretion. That construction would likely render the statutory system vulnerable to an attack, on constitutional grounds, for offending the doctrine of separation of powers expressed in Art. 4 § 1, Okl.Con.[8] The cited provision of our fundamental law has been viewed as prohibiting legislative imposition upon the judiciary of duties or functions incompatible with or not germane to its constitutionally-mandated mission and the posture of detachment and neutrality.[9] The Supreme Court of Arkansas recently held that judges may not establish a public defender's salary without violating the separation of powers'

proscription of the state's fundamental law.[10]

■ At their early appearance on the governmental scene, public defender personnel were deemed to be in the same category as private counsel acting by the court's appointment. This view placed them in the class of "auxiliary court personnel" over whom the judiciary traditionally claimed to have the power to appoint or remove and to allow their compensation from authorized sources, public or private.[11] More recently both textual authority and case law appear to channel a departure from the early view. They place defender personnel in the class of an independent service in the executive branch of our government.[12] Under the modern view judicial exercise of fiscal powers over the defender service may no longer be a matter of intra-service management but rather is considered an unauthorized invasion by the judiciary into the affairs of a coordinate branch. In short, the judiciary cannot permit itself to have any greater managerial involvement with public defender services than that it may be constitutionally allowed vis-a-vis the prosecution.

■ When a statute is susceptible of more than one meaning, our duty is to give

---

7. Our announced construction accords § 138.-4(a) a meaning that is harmonious with the ABA, NAC and NLADA standards for public defenders' salaries. ABA Standards Relating to Providing Defense Services, § 3.1 at p. 34 (1967); National Advisory Commission on Criminal Justice Standards and Goals, Courts, § 13.1, and Commentary (1973); Guidelines for Legal Defense Systems in the United States, Report of the National Study Commission on Defense Services, Final Report (1976) by the National Legal Aid and Defense Association, at p. 284. It is not unlikely that our Legislature was influenced by some of these standards and undertook to implement them in enacting § 138.4(a).

8. Art. 4 § 1, Okl.Con. provides:
    "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

9. *Ex parte Coffelt*, 93 Okl.Cr. 343, 228 P.2d 199, 201 [1951]; *Galloway v. Truesdell*, 83 Nev. 13, 422 P.2d 237 [1967]; *Opinion of the Justices*, 365 Mass. 639, 309 N.E.2d 476, 480 [1974]; *Case of Supervisors of Election*, 114 Mass. 247, 249, 251 [1873].

10. *Pulaski County ex rel. Mears v. Adkisson*, 560 S.W.2d 222, 223 [Ark.1978].

11. *Lachapelle v. United Shoe Machinery Corporation*, 318 Mass. 166, 61 N.E.2d 8 [1945].

12. *Pulaski County ex rel. Mears v. Adkisson*, supra note 10; Guidelines for Legal Defense Systems in the United States, Final Report [1976] by the National Legal Aid and Defense Association, p. 221; National Conference of Commissioners on Uniform State Laws, Model Public Defender Act, § 10, Handbook of the National Conference of Commissioners on Uniform State Laws, pp. 271, 278 [1970]; American Bar Association Standards Relating to Providing Defense Services, § 1.4, at p. 19.

it that one which makes it impervious to constitutional attack.[13]

We hold the terms of 19 O.S.Supp.1974 § 138.4(a)—the statute here under consideration—to be clear and self-executing. Judicial exercise of managerial discretion over public defenders' salaries would be of doubtful legal efficacy as it is fraught with hazards of constitutional infirmity.

Let the writ issue commanding the management of the respondent-court fund to equalize the pay for budgetarily approved positions in the defender service with their counterparts in the prosecutorial service in Tulsa County.

All Justices concur.

---

**13.** *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 [1979]; *Neumann v. Tax Commission,* Okl., 596 P.2d 530, 532 [1979].